**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

MIDASCO, INC.,
                         **Plaintiff,**

v.                                                              Civil Action No. 2:05cv508

M.E. HUNTER & ASSOCIATES, N/K/A
MASTEC NORTH AMERICA, INC.,

and

LIBERTY MUTUAL INSURANCE CO.,
                         **Defendants.**

## ORDER AND OPINION

This matter is before the court on defendant Liberty Mutual Insurance Company's Motion

for Summary Judgment and plaintiff Midasco Inc.'s Motion for Partial Summary Judgment.

After examination of the briefs and record, the court determines that the facts and legal

arguments are adequately presented, and the decisional process would not be significantly aided

by oral argument.  For the reasons set forth herein, the court **GRANTS** the defendant's motion

and **DENIES** the plaintiff's motion.

## I.  Factual and Procedural History

The instant matter arises out of a construction contract dispute between Midasco Inc., a

subcontractor, and MasTec North America Inc. ("MasTec"),[1] a general contractor.  Prior to such

dispute, MasTec entered into a highway construction contract with the Virginia Department of

---

[1] Plaintiff contracted with M.E. Hunter & Associates, Inc.; however, such corporation
was succeeded by MasTec North America.  For simplicity, both will be referred to as "MasTec."

Transportation ("VDOT").  Pursuant to Virginia statute, MasTec contracted with Liberty Mutual

Insurance Co. ("Liberty Mutual") to furnish performance and payment bonds in the amount of

the VDOT contract, approximately thirty-two million dollars, to the Commonwealth of Virginia.[2]

See Va. Code § 2.2-4337.  On December 28, 1998, four months after the bonds were executed,

MasTec entered into a subcontract with Midasco for the installation of concrete foundations,

camera poles, and other construction services required for the completion of the MasTec/VDOT

contract.[3]  After disputes arose relating to the subcontract, in July of 2001 Midasco and MasTec

entered into a settlement agreement.  Midasco states in its complaint, as well as in an affidavit

submitted by its president, that the last day Midasco provided labor or materials under the

subcontract or settlement was in May 2002. (Complaint ¶ 15; Pl. Mot. for Summ. J., Ex. 1.)

On May 10, 2005, approximately three years after Midasco completed its subcontracting

work, Midasco filed suit in Maryland state court alleging that MasTec breached the December

1998 subcontract as well as the July 2001 settlement agreement.  Furthermore, Midasco claimed

that Liberty Mutual improperly refused to pay Midasco under the payment bond.  MasTec and

Liberty Mutual removed the case to the United States District Court for the District of Maryland

premised on federal diversity jurisdiction.  Defendants subsequently succeeded in transferring the

case to the United States District Court for the Easter District of Virginia.  After transfer to this

---

[2] The bonds were signed by the President of MasTec and the "Attorney-in-Fact" for Liberty Mutual on August 25, 1998.  Based on the signatories' addresses listed on the bonds, it appears that the performance and payment bonds were executed in Atlanta, Georgia.

[3] The subcontract between MasTec and Midasco was signed by a representative from each corporation in its respective state and bears a Notary stamp from both Maryland (Midasco) and Georgia (MasTec).  However, MasTec filed an affidavit stating that the unsigned subcontract was mailed to Maryland and that after it was signed by Midasco's president it was returned to Georgia where MasTec's Vice President subsequently signed the subcontract.  Midasco does not contest such facts.

court, Liberty Mutual filed a motion for summary judgment alleging that Midasco failed to timely file suit under the payment bond as the Virginia "Little Miller Act" requires such actions to be filed within one year "after the day on which the person bringing such action last performed labor or last furnished or supplied materials." VA. CODE ANN. § 2.2-4341. Additionally, plaintiff filed a motion for partial summary judgment against MasTec and Liberty Mutual alleging that, under Virginia law, MasTec must immediately pay Midasco approximately $50,000 in retainage under the subcontract; MasTec does not appear to suggest such money will not become due in the future, only that it is not currently due. Both motions for summary judgment are now ripe for review.

## II.  Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985); FED. RULE. CIV. PRO. 56(c). The court must assess the evidence and draw all permissible inferences in the nonmovant's favor. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Nevertheless, the non-movant must make a sufficient evidentiary showing such that a jury could reasonably find in its favor. Celotex Corp., 477 U.S. at 322. Thus, while it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Inv. Co., v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987), when such burden has been met, it is up to the non-movant to establish the existence of such an issue. Matsushita, 475 U.S. at 586-87.

### III.  Choice of Law

A federal court sitting in diversity must apply the substantive law, including choice of law rules, of the state it is sitting in.  <u>Seabulk Offshore, Ltd. v. American Home Assur. Co.</u>, 377 F.3d 408, 418 (4th Cir. 2004).  However, if an action is transferred from another federal district court "it is settled that the choice-of-law rules of the original forum continue to apply."  <u>Deborah Linnell v. Angelyn Alexander Sloan</u>, 636 F.2d 65, 66-67 (4th Cir. 1980); <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964).  Here, although this court must apply the choice of law rules of Maryland, the original forum, the court notes that there is no significant difference between the choice of law rules of Maryland and Virginia as both follow the rule of "lex locus contractu" which requires the court to apply "the law of the jurisdiction where the contract was made" for disputes related to contract validity and interpretation.  <u>Riesett v. W.B. Doner & Co.</u>, 293 F.3d 164, 173 n.5 (4th Cir. 2002); <u>Seabulk Offshore</u>, 377 F.3d at 419.  Maryland and Virginia law consider a contract to be made "where the last act necessary to make the contract binding occurs."  <u>Riesett</u>, 293 F.3d at 173 n.5; <u>Seabulk Offshore</u>, 377 F.3d at 419.

### IV.  Analysis

#### A. Liberty Mutual's Motion for Summary Judgment

Liberty Mutual's motion for summary judgment contends that the one year statute of limitations in the Virginia Little Miller Act forecloses plaintiff's claims under the payment bond. In support, Liberty Mutual highlights that the payment bond in issue is a standard VDOT form, the project "Owner" listed on payment bond is the "Commonwealth of Virginia," and Virginia statute <u>requires</u> such bond to be issued upon the award of the underlying Virginia public works contract.  Plaintiff, however, contends that Virginia law does not apply to the payment bond as

the bond was entered into by a Massachusetts surety and a Georgia principle, and argues that a common law right to sue would be recognized by the courts of Massachusetts, Georgia or in the alternative, Virginia.  The court concludes, however, that looking to the substantive law of Massachusetts, Georgia, and Virginia, the bond in issue does not create a common law right of action that allows the plaintiff to avoid the statutory limitations period.

### 1. Virginia's Statutory Framework

The Virginia "Little Miller Act" requires performance and payment bonds be issued upon the award of public construction contracts exceeding $100,000.  VA. CODE ANN. § 2.2-4337.  For transportation related projects, such bonds must be "in a form and amount satisfactory to the public body," mandating that, here, VDOT must approve the bond.  Id.  The bonds must be executed by a surety company authorized to do business in Virginia, and the bonds must be made payable to the Commonwealth.  Id.  The statutory framework is intended "to provide protection for materialmen and subcontractors who furnish supplies or work for a principal who has contracted with a public agency . . . .  This protection is afforded such materialmen and subcontractors because they are unable to perfect mechanic's liens against public property."  Commercial Constr. Specialties, Inc. v. ACM Const. Mgmt. Corp., 242 Va. 102, 105-06 (Va. 1991).  Although such statutory framework is designed to protect subcontractors' rights and is construed broadly in their favor, with such protection comes a strict statute of limitations requiring that actions under a payment bond must be filed within one year "after the day on which the person bringing such action last performed labor or last furnished or supplied materials."  VA. CODE ANN. § 2.2-4341.

## 2.  The Instant Bond's Failure to Create a Common Law Right of Action

Plaintiff contends that the Virginia one year statute of limitations does not apply to the payment bond in issue because such bond was signed in either Georgia or Massachusetts and that the substantive laws of such states indicate that a common law right of action exists outside of the statutory framework.  Although the bond appears to have been signed in Georgia, plaintiff relies heavily on Robinson Clay Product Co. v. Beacon Constr. Co. of Massachusetts, 339 Mass. 406, 159 N.E.2d 530 (1959), for the proposition that the payment bond creates a common law cause of action that is not subject to the statutory one year limitations period.  Even assuming that the payment bond, a surety contract, was entered into in Massachusetts, the court finds not only that Robinson Clay is factually distinguishable from the instant matter, but that it does not appropriately reflect Massachusetts law.

Attempting to illustrate the law of Massachusetts, plaintiff relies on Robinson Clay for the proposition that a public works bond issued pursuant to a state statute similar to the Virginia Little Miller Act creates a common law right to sue and therefore is not subject to the one year statutory limitations period.  However, the bond at issue in Robinson Clay differs substantially from the instant payment bond, as the Robinson Clay bond stated first, that the bond was made in compliance with the statute; second, that "in case of liabilities not covered [by statute] but covered by this bond, then provisions of this bond shall control;" and third, that "[i]n addition to the obligations . . . enumerated above, this bond is also made for the use and benefit of all persons, firms, and corporations who may furnish any material or perform any labor . . . and that each of them are hereby made obligees . . . and each of them may proceed or sue hereunder." Robinson Clay, 339 Mass. at 407.   Thus, the bond in Robinson Clay expressly went beyond the

statutory requirements and created rights independent of the statute; therefore, a common law right to sue was recognized.

Additionally, the Robinson Clay court was not applying "Massachusetts law" but rather was reading the bond in conjunction with the New Hampshire statute it was issued under as well as a previous New Hampshire Supreme Court ruling interpreting the interplay between bond language and the New Hampshire statute.  See Petition of Leon Keyser, Inc., 97 N.H. 404, 89 A.2d 917, 920 (1952).[4]  The Robinson Clay court, in considering the expansive language of the bond before it as well as the New Hampshire statute and caselaw stated: "In the present case, there is not so much a waiver [of the statutory requirements] as there is the creation of a right of suit independent of the statute."  Robinson Clay, 339 Mass. at 408.  Thus, Robinson Clay does not represent "Massachusetts law" but rather, is an illustration of a Massachusetts court considering a statute and caselaw from another jurisdiction.

Considering cases analyzing "Massachusetts law," Massachusetts cases both prior to and subsequent to Robinson Clay expressly decline to recognize a common law right to action under a payment bond.  In Martin Fireproofing Corp. v. Aetna Ins. Co., 346 Mass. 498, 500-01, 194 N.E.2d 101, 102 (1963), the plaintiff, a subcontractor, sought relief from an insurance company under a payment bond executed between the general contractor and the insurance company.  The defendant insurance company demurred, claiming that the "bond referred to in plaintiff's declaration was issued to secure the requirement of [the statute] and the plaintiff has failed to

---

[4]  The New Hampshire Supreme Court, like Virginia courts, recognized that the "statute is to be read into the bond for the purpose of affording rights to persons intended by the Legislature to be protected."  Keyser, 97 N.H. at 408.  The court concluded that the language of the bond at issue went beyond the statute; therefore, the court saw no reason "to deprive others of the protection which the parties to the bond intended and provided for, and which the statute does not expressly prohibit."  Id.

allege that it has filed a sworn statement as required by the said statute." Id. at 500.  The court

framed the issue before it as "whether the plaintiff is entitled to enforce [the bond] as a common

law bond by reason of provisions contained in the bond which go beyond the statute." Id.

(emphasis added).  The court, relying on Philip Carey Mfg. Co. v. Peerless Cas. Co., 330 Mass.

319, 113 N.E.2d 226 (1953) concluded that the bond was enforceable solely as a statutory bond,

and plaintiff's failure to satisfy the statutory requirements was fatal to the action.  Martin

Fireproofing, 346 Mass. at 500-01.  See Philip Carey, 330 Mass. at 322 (finding that bond

language similar to the statute dictates that "plaintiff's rights must be found exclusively in the

statute" and that failure to timely meet the statutory filing requirements barred the action).

Therefore, the Massachusetts Supreme Court, interpreting its own law, has expressly stated that a

common law right outside of the statute under which a bond is issued does not exist.

      Turning to the instant facts, here, the payment bond plaintiff relies upon does not include

provisions creating rights for a subcontractor outside of the statute, but rather, mirrors the statute.

The payment bond, a Commonwealth of Virginia standard form bond, states that the principal

"shall promptly pay all just claims for labor and material . . . performed for or supplied to said

'Principal' or any subcontractor." (Liberty Reply, Ex. B.)  The Virginia statute states: "The bond

shall be for the protection of claimants who have and fulfill contracts to supply labor or materials

to the prime contractor . . . or to any subcontractors, in furtherance of the work provided for in

the contract, and shall be conditioned upon the prompt payment for all materials furnished or

labor supplied or performed in the furtherance of the work."  VA. CODE ANN. § 2.2-4337.A.2.

Nowhere does the bond create rights "in addition" to the statutory rights nor expressly create an

independent right to sue.  Thus, the facts of this matter indicate that the bond in issue, listing the

Commonwealth as the "Owner," on a standard bond form issued by the Commonwealth, create only statutory rights; therefore, the bond is factually distinguishable from the bond at issue in Robinson Clay.  Furthermore, in Martin Fireproofing, 346 Mass. at 500-01, and Philip Carey, 330 Mass. at 322, even when the bond contained provisions that went beyond the statute, the Massachusetts Supreme Court determined that the plaintiffs only had statutory rights.  As a result, assuming Massachusetts law applies, a common law right of action does not exist independent of the statute; therefore, a cause of action under the valid statutory bond must be filed within the one year statutory limitations period.

Similarly, under Georgia law, the statutory limitations period governing public works bonds has repeatedly been applied to bonds issued pursuant to it, and this court is aware of no case that recognizes that a common law right of action would allow a plaintiff to avoid the statutory limitations period.  See, e.g., Southern Elec. Supply Co. v. Trend Constr. Inc., 259 Ga. App. 666, 578 S.E.2d 279 (2003) (reversing summary judgment as there existed a material fact as to whether plaintiff's "claim under a payment bond obtained by the general contractor under Georgia's Little Miller Act" was timely filed within the one year requirement of such act); Consolidated Elec. Supply, Inc. v. Bishop Contracting Co., 205 Ga. App. 674, 676, 423 S.E.2d 415, 417 (1992) (recognizing that the Georgia Little Miller Act includes a one year limitations period which applies to suits under bonds issued pursuant to such act).  In contrast, the Georgia cases cited by plaintiff stand only for the proposition that a defective statutory bond may be construed as a common law bond, not for the proposition that the statutory limitations period can be avoided under a  valid statutory bond.  See Rust v. Producers Co-op. Exchange, 81 Ga. App. 260, 58 S.E.2d 435 (1950); United States Fidelity & Guaranty Co. v. McCurdy, 180 Ga. 683, 180

S.E. 633 (1935) (stating that the bond in issue "is not a statutory official bond, but is a common-law bond, because [it was] not made payable to the obligee named by the statute authorizing the giving of such bond").  Here, as there is no allegation that the bond in issue is invalid with respect to the Virginia statute under which it was issued, assuming Georgia law applies, a common law right of action does not exist independent of the statute; therefore, a cause of action under the valid statutory bond must be filed within the one year statutory limitations period.

Likewise, under Virginia law, it is equally clear that a subcontractor's claim against a payment bond issued under the Virginia Little Miller Act must be filed within the one year limitations period set forth in the act.  Similar to Massachusetts, Georgia, and New Hampshire, the Virginia courts require that the bond and the statute under which it was issued be considered together, and that the one year limitations period in the statute applies to bonds issued under such statute.  See Thomas Somerville Co. v. L.R. Broyhill, 200 Va. 358, 360, 105 S.E.2d 824, 826 (1958) ("The statute and the bond are to be read together, for together they constitute[] the measure of [the general contractor's] undertaking and the extent of [its] and the surety's liability."); Southwood Builders, Inc., v. Peerless Ins. Co., 235 Va. 164, 366 S.E.2d 104 (1988) ("[T]he statute and bond are to be read together.").  Although Virginia, like Georgia, has recognized that a defective statutory bond may still be a valid common law bond, Virginia courts have not held that a valid statutory bond creates a common law right of action outside of the statutory limitations period.  See, e.g., Wilson v. Foster, 139 Va. 82, 123 S.E. 527 (1924).[5]

_____

[5] Plaintiff cites C.S. Luck & Sons, Inc. v Boatwright, 157 Va. 490, 499, 162 S.E. 53, 56 (1932) for the proposition that rights outside of the statute can be created by the bond.  However, first, such case was applying Maryland law, and second, the instant bond does not contain language indicating that rights beyond the statute were intended.  Therefore, C.S. Luck fails to

In substantially the same scenario before the court today, the defendant in <u>Joseph F. Hughes & Co. v. George H. Robinson Corp.</u>, 211 Va. 4, 6, 175 S.E.2d 413, 415 (1970) claimed "the terms and conditions of the bond are enforceable against [plaintiffs] as common law obligations." The Virginia Supreme Court, noting that the issue was one of first impression, declined to find that rights existed "independent of the statute" and concluded that the limitations period in the Virginia statute "manifests a legislative intent to impose a prohibition rather than merely establish a minimum period." <u>Id.</u> The court explained in its conclusion that because the statutory limitation period is prohibitory the parties could not extend the limitations period by contract; therefore, "the statutory language controls the time for bringing an action on the bond." <u>Id.</u>; <u>see</u> <u>also</u> <u>Southwood Builders, Inc., v. Peerless Ins. Co.</u>, 235 Va. 164, 366 S.E.2d 104 (1988) (reiterating that statute and bond are to be read together but finding that a more restrictive limitations period contained in a bond does not conflict with the Virginia statute). Although the Virginia Little Miller Act has undergone revisions since <u>Hughes</u>, the statute is still phrased in a prohibitory manner, stating that "[a]ny action on a payment bond shall be brought within one year . . . " VA. CODE ANN. § 2.2-4341.[6] Furthermore, even if the statute were not considered to be prohibitory, the instant bond did not proport to establish a longer limitations period and there is no indication that Virginia courts have ever recognized a longer limitations period premised on

_____

establish that Virginia law recognizes a common law right of action outside of the statute. Additionally, plaintiff argues that when "a bond is reasonably susceptible of two constructions, the one more favorable to the claimant will be adopted." <u>Century Indem. Co. v. Esso Standard Oil Co.</u>, 195 Va. 502, 512, 79 S.E.2d 625, 630 (1954). However, the very next line of the <u>Esso</u> opinion clarifies that courts will not read into a bond an obligation which it does not contain "in the absence of a statutory requirement." <u>Id.</u> Here, there is clearly a statutory limitations requirement; therefore, Virginia courts read such requirement into the bond.

[6] The code at the time <u>Hughes</u> was decided stated: "No action on any bond required herein shall be brought unless within one year . . . ." <u>Hughes</u>, 211 Va. at 6.

common law when a valid statutory bond existed.  Therefore, the court concludes that, applying Virginia law, Midasco failed to timely file suit under the payment bond issued by Liberty Mutual.

After considering case law from Massachusetts, Georgia, and Virginia, the court concludes that plaintiff failed to timely file suit within one year of last performing labor or providing materials under the subcontract between Midasco and MasTec.  The bond in issue was a statutory bond issued pursuant to the Virginia Little Miller Act and therefore, was subject to a strict one year statutory limitations period.  It is clear that the instant bond does not confer broad rights outside of the statute; therefore, even if controlling law allowed for the creation of a common law right to sue, here, no such rights were created.  As a result, plaintiff was required to bring an action within the statutory time period and as plaintiff failed to do so, the lawsuit is timebarred and Liberty Mutual's motion for summary judgment is granted.

### B. Midasco's Motion for Partial Summary Judgment

Midasco's motion for partial summary judgment seeks immediate recovery of $52,474.33 retained by MasTec under the construction subcontract between Midasco and MasTec. Plaintiff's motion in support of such immediate recovery of the retainage argues for the application of Virginia or Maryland law to the interpretation of the subcontract.  However, as the final act required to make the contract binding occurred in Georgia, under Maryland choice of law rules, this court is bound to apply the law of Georgia for matters related to contract interpretation.  Georgia's minority rule pertaining to retainage dictates that plaintiff's motion is denied.

Plaintiff's motion seeking immediate payment of retained funds turns on the construction of the "pay when paid" clause included in the subcontract.  The subcontract between Midasco

and MasTec states: "[T]he Contractor will deduct and withhold such deductions as are withheld by VDOT and those deductions will be continued until all the work has been accepted.  After final acceptance by the Owner and payment is received by the Contractor, the Contractor will pay the Subcontractor all monies due, based on final quantities as determined and paid for by the Owner." (Pl. Mot. for Summ. J., Ex. 1A, Art. VIII § B.)  Additionally, when contract disputes between MasTec and Midasco arose, the parties entered into a Settlement Agreement which stated that "Midasco retains all rights to collect its retainage, when it comes due under the original contract." (Pl. Mot. for Summ. J., Ex.1B, § 3.c.)

Turning to the legal interpretation of the "pay when paid" clause, as plaintiff correctly points out, the highest courts in Maryland and Virginia have both adopted the majority rule construing such clauses as giving the General Contractor a "reasonable time" to collect from the owner and have not been held to be a condition precedent to the subcontractor obtaining payment of retainage.  See Thos. J. Dyer Co. v. Bishop Intern. Eng'g Co., 303 F.2d 655, 661 (6th Cir. 1962) (expressing majority view that such clauses are intended to "postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor"); Atlantic States Constr. Co, v. Drummond & Co., 251 Md. 77, 246 A.2d 251 (1968) (following majority view); Galloway Corp. v. S.B. Ballard Const. Co., 250 Va. 493, 506, 464 S.E.2d 349, 357 (1995) (holding that the default interpretation of "pay when paid" clauses is that they require payment within a reasonable time).  However, unlike Virginia and Maryland, Georgia follows the minority interpretation of  "pay when paid" clauses and considers them "a condition precedent to [the general contractor's] liability for the final payment of the contract

13

price." <u>Jerome Distribs., Inc. v. B.L.I. Constr. Co.</u>, 142 Ga. App. 776, 777, 237 S.E.2d 13, 13

(1977); <u>see</u> <u>Associated Mech. Corp. v. Martin K. Eby Constr. Co.</u>, 67 F. Supp. 2d 1375, 1377-79

(1999) (finding that "Georgia law provides that no payment is due a subcontractor where a

subcontract was conditioned upon the receipt of payment by contractor from the owner" and

"rejectin[ing] plaintiff's invitation to join the 'majority rule'").

     Here, Maryland's choice of law rules dictate that contract interpretation is governed by

the laws of the forum "where the last act necessary to make the contract binding occurs."

<u>Riesett</u>, 293 F.3d at 173 n.5.  As stated in MasTec's opposition to partial summary judgment,

"the final act required to bind the parties in this Subcontract was the signature of MasTec's

President, M.E. Hunter, in Atlanta, Georgia." (MasTec Opp. to Summ. J., 5.)  Plaintiff failed to

file a reply brief disputing such statement; therefore, considering the evidence in a light most

favorable to the defendant, Maryland choice of law rules require this court to apply Georgia law

to the construction of the subcontract.  Because Georgia law enforces "pay when paid" clauses as

a condition precedent, MasTec is correct that retainage is not due to Midasco until "final

acceptance by [VDOT] and payment is received by [MasTec]."  Pl. Mot. for Summ. J., Ex. 1A,

Art. VIII.B.)[7]  Therefore, plaintiff's motion for partial summary judgment is denied with respect

to both defendants.

---

     [7] Plaintiff contends that if the one year statutory limitations period applies and the "pay
when paid" clause is considered a condition precedent to recovery, the protection under the
payment bond with respect to retainage is illusory, because retainage would not become due until
after the limitations period has already run.  Although plaintiff appears correct, such result is not
based on a failure of the Virginia statutory framework, but rather, on plaintiff's decision to
voluntarily submit to the law of Georgia for contract interpretation.  As a result, plaintiff does not
have rights against the payment bond for the small percentage of contract value still due as
retainage; however, plaintiff still has the right to pursue the retainage allegedly due from MasTec
upon final payment by VDOT.

## V.  Conclusion

For the reasons discussed more fully above, Liberty Mutual's motion for summary judgment is **GRANTED**.  After considering the facts of the instant case in conjunction with the law of multiple jurisdictions, the court concludes that, under any potential jurisdiction's law, the statutory bond in issue does not create a common law right allowing plaintiff to entertain a lawsuit outside of the statutory limitations period.  Additionally, Midasco's motion for partial summary judgment is **DENIED**, as interpretation of the subcontract between Midasco and MasTec is governed by Georgia law which construes a "pay when paid" clause as a condition precedent to payment.

The Clerk is **REQUESTED** to mail copies of this Order to counsel of record.

**IT IS SO ORDERED.**

_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February _22_, 2006